IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAWRENCE HARRIS,

                 Plaintiff,

  v.

LORIE IVERSON, SGT. BOARDMAN,
MR. BROADBENT, GARY BOUGHTON,
W. BROWN, K. SALINAS,
C. O'DONNELL, and MR. KARTMAN,

                 Defendants.

OPINION & ORDER

16-cv-594-jdp

---

      Plaintiff Lawrence Harris, a prisoner incarcerated at the Wisconsin Secure Program Facility, alleges that prison officials retaliated against him for filing complaints about being fired from his prison job. He says that several of the defendants gave him a conduct report in retaliation for his complaints about being fired, and several other defendants, in their roles as grievance examiners, retaliated against him by mishandling a grievance about his firing.

      Defendants have filed a motion for summary judgment alleging that Harris failed to exhaust his administrative remedies for his claims. Dkt. 17. Harris has filed a motion to amend his complaint to add new claims, Dkt. 14, and a motion for the court's assistance in recruiting him counsel, Dkt. 26. After considering the summary judgment materials, I conclude that Harris indeed failed to exhaust his administrative remedies on each of his claims, so I will grant defendants' motion for summary judgment and dismiss the case. I will deny both of Harris's motions.

**A. Motion for leave to amend complaint**

      Harris seeks leave to amend his complaint to add claims against several prison officials for interfering with his ability to access the courts by denying a request for an extension of his

legal loan. Harris says that he was unable to fully litigate an appeal of a state-court case because his meager income was not enough to pay for the documents he needed to submit. He also says that he did not receive priority law library time.

Only some of the proposed new defendants are already defendants in this case, so Federal Rule of Civil Procedure 18 does not allow me to add a whole new set of defendants along with the current set, unless the claims may also be joined together under Rule 20. *See, e.g., Balli v. Wisconsin Dep't of Corr.*, No. 10-cv-67-bbc, 2010 WL 924886, at *1 (W.D. Wis. Mar. 9, 2010) ("[T]he core set of allowable defendants must be determined under Rule 20 before a plaintiff may join additional unrelated claims against one or more of those defendants under Rule 18."). Harris says that his new claims are related to his current claims because they are part of a pattern of retaliation against him. But nothing in his allegations explain why this is so, other than that the events regarding his access-to-the-courts allegations started shortly after the other allegedly retaliatory events. This is not enough of a connection to say that these claims are part of the same series of transactions or occurrences regarding his conduct report and grievances, as is required under Rule 20. Accordingly, I will deny Harris's motion for leave to amend his complaint. He remains free to bring these new allegations in a new lawsuit.

## B. Recruitment of counsel

Harris asks the court to appoint him a lawyer. Dkt. 26. I do not have the authority to *appoint* counsel to represent a pro se plaintiff in this type of a case; I can only recruit counsel who may be willing to serve voluntarily in that capacity. To show that it is appropriate for the court to recruit counsel, a plaintiff must first show that he has made reasonable efforts to locate an attorney on his own. *See Jackson v. Cty. of McLean*, 953 F.2d 1070, 1072–73 (7th Cir. 1992). To meet this threshold requirement, this court generally requires plaintiffs to submit

correspondence from at least three attorneys to whom they have written and who have refused to take the case. Harris provides three letters he wrote to attorneys. Although he provides only one response turning him down, I will assume for purposes of this opinion that Harris has made reasonable efforts to obtain counsel on his own.

Second, the court will seek to recruit counsel for a pro se litigant only when the litigant demonstrates that his case is one of those relatively few in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). Harris states that he has limited resources and is not well versed in the law, but those are common problems facing pro se prisoners and they do not in themselves show that counsel is necessary. Although, as discussed further below, I will grant summary judgment to defendants, it is not because of Harris's limitations; he presented relatively well-reasoned briefs and appears to have gotten the help of a jailhouse lawyer with some experience. The problem is that the facts surrounding his attempts at exhausting his administrative remedies require me to rule for defendants. I will deny Harris's motion and go on to consider the summary judgment motion.

C. Exhaustion

1. Undisputed facts

Harris was fired from his prison job on April 7, 2016. Harris submitted an inmate grievance on April 11 stating that he was wrongfully terminated, but he did not sign the grievance. The grievance was returned to him for being unsigned, the same day and he promptly signed it and resubmitted it. The grievance was assigned No. WSPF-2016-7502.

3

On April 15, Harris was issued a conduct report for theft regarding an incident at his prison job in which he was accused of stealing food from the kitchen. At an April 25 hearing, Harris admitted to taking the food. He was found guilty. He did not appeal this decision.

On May 9, defendant Institution Complaint Examiner W. Brown recommended dismissing Harris's '7502 grievance, stating that he was fired for the theft and for receiving an unsatisfactory performance evaluation. Defendant Warden Gary Boughton dismissed the grievance on May 10. Harris filed an appeal in which he stated that Brown "[d]id a poor investigation" and did not interview him, and that staff failed to follow its rules about using conduct reports in reviewing the performance of prison workers. Dkt. 19-3, at 16–19. Defendant Correction Complaint Examiner K. Salinas disregarded Harris's new allegations, stating, "The inmate attempts to disparage the ICRS and the ICE office at WSPF at length in this appeal submission. This new issue raised on appeal is not properly before this examiner and will not be addressed." *Id*. at 6. Defendant Cindy O'Donnell dismissed the appeal on behalf of the Office of the Secretary of the DOC.

2. **Legal standards**

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and "applies to all inmate suits." *Woodford v. Ngo*, 548 U.S. 81 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement's primary purpose is to "alert[ ] the state" to the problem "and invit[e] corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Section 1997e(a) requires "proper exhaustion," *Woodford*, 548 U.S. at 93; *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which means that the prisoner must follow

prison rules when filing the initial grievance and all necessary appeals, "in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005) (internal quotation omitted). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo*, 286 F.3d at 1024.

Usually, the State of Wisconsin makes administrative remedies available to inmates under the Inmate Complaint Review System (ICRS). But there are certain limits to inmates' use of the ICRS. Under Wis. Admin. Code § DOC 310.08(2)(a), an inmate may not use the ICRS to raise "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Accordingly, if an issue "is related to a conduct report, the inmate must raise it at the time of his disciplinary hearing and again on appeal to the warden, assuming the matter is not resolved at the disciplinary hearing stage." *Lindell v. Frank*, 2005 WL 2339145, at *1 (W.D. Wis. Sept. 23, 2005). After the disciplinary appeal is complete, an inmate may use the ICRS only to appeal procedural errors. Wis. Admin. Code §§ DOC 303.82(4); 310.08(3).

3. **Analysis**

Defendants contend that Harris failed to exhaust his administrative remedies with regard to both sets of his claims: (1) Broadbent, Iverson, Boardman, and Kartman gave him a conduct report in retaliation for his complaints about being fired; and (2) complaint examiners Brown, Boughton, Salinas, and O'Donnell retaliated against him by mishandling the grievance about his firing. They say that Harris's grievance about his termination predated the alleged retaliation, so it could not have exhausted his retaliation claims, and Harris failed to file any grievances directly about the conduct report or the handling of his grievance. They acknowledge that Harris did mention examiner Brown's handling of his grievance in the appeal of his

5

grievance, but they contend that this is not sufficient to exhaust his remedies, as he failed to file a brand-new grievance at the institution level about any of the examiners' conduct. They also note that Harris did not appeal the conduct-report decision either.

Harris contends that administrative remedies were not truly available to him because the administrative rules did not allow him to file a grievance about issues related to his conduct report. He cites to previous orders of this court that have either considered an inmate's administrative remedies exhausted by his conduct-report appeal, or unavailable because of confusing or incorrect information the inmate was given about the parallel ICRS and conduct-report systems. *See* Dkt. 20 (citing *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1007 (W.D. Wis. 2009); *Vasquez v. Hilbert*, No. 07-cv-723-bbc, 2008 WL 2224394 (W.D. Wis. May 28, 2008); *Lindell v. O'Donnell*, No. 05-C-04-C, 2005 WL 2740999 (W.D. Wis. Oct. 21, 2005).

Harris has a point about the exhaustion of his claims about being given a retaliatory conduct report. Although the state initially argues that Harris failed to file an ICRS grievance about defendants alleged retaliatory conduct report, as discussed above, the ICRS rules generally do not allow grievances of conduct-report-related issues. Only procedural conduct-report-related issues may be raised in the ICRS system, and only after the disciplinary process is complete. In keeping with rulings like *Shaw, Vasquez,* and *Lindell*, I conclude that Harris did not have to use the ICRS process to grieve issues about his conduct report.

Instead, he should have used the conduct-report process itself to raise the issue of the retaliatory conduct report. This dooms this set of claims because regardless how Harris managed the ICRS process, he failed to exhaust the conduct-report process. After he was convicted on the theft charge, he did not appeal the decision to Warden Boughton.

Harris says that he did alert Boughton about the retaliation by sending him a letter titled "update on job removal status" on April 27, two days after the conduct-report hearing, in which he stated that prison officials did not follow the proper protocol by firing him before he was ever convicted of any wrongdoing. *See* Dkt. 21-1. The problem for Harris is that this letter cannot reasonably be seen as fulfilling his burden to appeal his disciplinary decision.

As stated above, Harris was required to follow prison rules by litigating his claims "in the place, and at the time, the prison's administrative rules require." *Burrell*, 431 F.3d at 284–85. Harris wrote a letter instead of filling out the form usually used for conduct-report appeals, and the letter is not written from the perspective of someone complaining about the outcome of the conduct-report proceedings. He focuses on what he believes was a breach of protocol by him being fired before he was convicted of wrongdoing. Boughton appears to have agreed with Harris because he responded by changing the date of Harris's termination to April 25, the date of the conduct-report hearing. *See* Dkt. 21-2. Boughton also stated that "Ms. Sutter is coordinating the pay adjustment to [Harris's account]," by which I take to mean that Harris received back pay for the extra time he was now deemed to have held the position. But neither Harris's letter nor Boughton's response can reasonably be construed as documents filed pursuant to a disciplinary appeal, because they do not discuss the substance of the hearing or the possibility of overturning the conviction. Because Harris did not exhaust the disciplinary process about the retaliatory conduct report, I will grant defendants' motion for summary judgment on this set of claims.

That leaves Harris's set of claims about retaliatory misconduct by the ICRS examiners with regard to his grievance about his termination. Harris did not file a separate grievance about this issue, although he did complain about Institution Complaint Examiner W. Brown's

7

conduct in his appeal of the '7502 grievance. Raising the issue on appeal is not sufficient to exhaust his claims: the corrections complaint examiner disregarded that argument as not properly before the CCE. This was an appropriate response, not only because the issue was raised for the first time on appeal, *see Malone v. Clark*, No. 04-C-229-C, 2004 WL 2504211, at *5 (W.D. Wis. Oct. 26, 2004) ("The exhaustion procedures require plaintiff to raise his claim initially in an inmate complaint and receive a decision on that complaint."), but also because inmate grievances must be limited to one issue at a time. *See* Wis. Admin. Code § DOC 310.09(1)(e) (Complaints . . . shall: . . . Contain only one issue per complaint . . . .").

Harris also argues that it would have been futile to file a grievance about the grievance examiners, because a fellow inmate, Oscar Garner, was rebuffed in a similar situation. Garner says that he filed an inmate grievance in 2014 about an allegedly retaliatory conduct report, only to have the institution complaint examiner reject it as being related to the conduct report. Then, when Garner filed a grievance against the complaint examiner for failing to investigate his complaint, defendant Brown rejected that grievance as having already been addressed by the previous grievance. So I take Harris to be saying that he thought that had he filed a grievance about the grievance examiners' retaliation, that grievance would have been rejected too.

I am not persuaded that Garner's grievance shows that an administrative hearing was not available to Harris. If Harris could show that it was the DOC's policy or practice to reject all complaints about grievance examiners, that might be enough to show that the grievance process is unavailable for those types of complaints. But even if Garner's grievance had been mishandled, that is not enough to show that Harris's remedies were unavailable; an examiner (like any decision maker) is bound to make mistakes, but that does not mean the entire system

is unavailable to future filers. It was Harris's responsibility to file a grievance about the examiners' retaliation. Because he failed to do so, I will grant defendants' motion for summary judgment on this set of claims as well. Because Harris failed to exhaust all of his claims, I will dismiss the entire case without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice).

ORDER

IT IS ORDERED that:

1. Plaintiff Lawrence Harris's motion for leave to amend his complaint, Dkt. 14, is DENIED.

2. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 26, is DENIED.

3. Defendants' motion for summary judgment based on plaintiff's failure to exhaust administrative remedies, Dkt. 17, is GRANTED. This case is DISMISSED without prejudice.

4. The clerk of court is directed to enter judgment for defendants and close this case.

Entered March 9, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge